An order will ISSUE.

Calvin **KEARNEY**, Petitioner,

v.

Stephen **DALSHEIM**, Warden of Downstate Correctional Facility, Thomas Coughlin, III, Commissioner of Correctional Services for the State of New York, Arthur Cinotti, Warden of Complex C 76 Rikers Island Prison, Benjamin Ward, New York City Commissioner of Correction, Respondents.

84 Civ. 0303 (RWS).

United States District Court, S.D. New York.

May 9, 1984.

Calvin Kearney # 083A3472, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for respondents; Melvyn E. Leventhal, Deputy First Asst. Atty. Gen., Arlene R. Silverman, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

*Pro se* petitioner Calvin Kearney ("Kearney"), a state inmate at the Ossining Correctional Facility ("Ossining"), brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, respondents' motion to dismiss the application is granted, and the petition is dismissed.

Kearney is currently serving a one-to-three-year sentence [1] and awaiting trial on a homicide indictment, which will be prosecuted in Kings County Supreme Court. After being sentenced on the initial conviction, Kearney was transferred from the Brooklyn House of Detention to Downstate Correctional Facility ("Downstate") in Fishkill, New York. Although a complete recitation of Kearney's subsequent travels is not necessary, it should be noted that he has been subjected to numerous transfers to facilities which are some distance from Kings County Supreme Court. Kearney claims that as a result of these transfers, he cannot effectively communicate with his attorney or potential witnesses regarding his pending indictment. He also contends that the time-consuming and arduous trips to and from court appearances prevent him from participating in his defense.[2]

Kearney seeks an order enjoining prosecution of his pending indictment and directing his release if he is not returned to the Brooklyn House of Detention on the grounds that he is constitutionally entitled to be imprisoned in a facility within reason-

---

1. Neither petitioner nor respondent has apprised the court of the offense for which Kearney is currently imprisoned.

2. Kearney alleges that library facilities and sanitary conditions at Downstate and Rikers Island Prison are substandard. However, inasmuch as Kearney does not advance similar complaints regarding his confinement at Ossining, these claims are moot.

able proximity of Kings County Supreme Court. Of course, injunctions against state prosecution of criminal indictments are proscribed by the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Nonetheless, Kearney's request for a transfer warrants further discussion.

The gravamen of Kearney's complaint is that the repeated transfers have violated his Sixth Amendment right to counsel and his Fourteenth Amendment right of access to court. Kearney alleges that oral motions to transfer, made by his attorney, have been rejected by the Kings County Supreme Court. In addition, Kearney has failed in his *pro se* attempts to maintain Article 78 proceedings in the nature of a writ of mandamus to compel respondents to return him to the Brooklyn House of Detention. His first Article 78 petition was dismissed without prejudice by Suffolk County Supreme Court Justice Frank P. DeLuca, who stated that the court lacked jurisdiction over the matter since Kearney is to be tried in Kings County. Pursuant to Justice DeLuca's suggestion, Kearney renewed his petition in Kings County. However, because Kearney is represented by counsel, the clerk of the Kings County Supreme Court refused to accept his *pro se* petition.

■ At the outset, the court must determine whether Kearney's petition, styled as an action for habeas corpus relief, should be considered a civil rights action brought pursuant to 42 U.S.C. § 1983. In *Morrish Science Temple of America v. Smith*, 693 F.2d 987 (2d Cir.1982), the Court of Appeals for the Second Circuit held that under the liberal pleading standard applicable to *pro se* complaints, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652

(1972), district courts should entertain cognizable § 1983 claims which have been inappropriately raised in a habeas petition. The designation of a prisoner's claim as a habeas petition or § 1983 action is critical because, unlike habeas claims, § 1983 actions are not subject to the exhaustion requirement codified in 28 U.S.C. § 2254(b) and (c). *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

■ Under the standard of *Preiser v. Rodriguez, supra*, Kearney's claim must be categorized as a petition for habeas corpus. In *Preiser*, the Supreme Court held that § 1983 actions brought by inmates seeking release from confinement rather than damages should be categorized as habeas actions.[3] Unlike the petitioner in *Moorish Science Temple, supra*, 693 F.2d at 989, who sought damages and an injunction altering the conditions of his confinement at a given facility, Kearney does not seek damages, but rather seeks a release from his current place of confinement. In effect, he argues that his confinement in any facility other than the Brooklyn House of Detention "vitiates the justification for confinement." *United States ex rel. Murray v. Owens*, 341 F.Supp. 722, 723 (S.D.N.Y.1972), *rev'd on other grounds*, 465 F.2d 289 (1972). Habeas corpus is an available and proper remedy in such a situation. *See, e.g., id.; Humphrey v. Cady*, 405 U.S. 504, 514, 92 S.Ct. 1048, 1054, 31 L.Ed.2d 394 (1972) (state prisoner presented a cognizable habeas claim by challenging, among other things, his assignment to a special unit for sexual offenders); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (habeas corpus used as a vehicle to release a prisoner from disciplinary custody); *Roba v. United States*, 604 F.2d 215,

---

**3.** The Court noted in *Preiser:*

> The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity. That principle was defined in *Younger v. Harris* [citation omitted] as "a proper respect for state functions" and it has as much relevance in areas of state administrative concern as it does where state judicial action is being attacked.... The strong con-

siderations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the state the first opportunity to correct the errors made in the internal administration of their prisons.

411 U.S. at 491, 492, 93 S.Ct. at 1837.

219 (2d Cir.1979) ("petitioner's challenge to his transfer while seriously ill would be a challenge to the conditions of his confinement, for which habeas corpus relief ... would be available").

■ Because Kearney's claim is for habeas corpus, it is subject to the exhaustion requirement. At this juncture, Kearney has yet to exhaust even his available pretrial remedies. In refusing to accept Kearney's *pro se* Article 78 petition, the clerk of the Kings County Supreme Court indicated that the court would consider the petition if it were submitted by Kearney's attorney. Contrary to Kearney's assertion, the clerk's rejection of his petition does not constitute a violation of the right to proceed *pro se* as defined by *Farretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "[T]he rights of self-representation and representation by counsel 'cannot be both exercised at the same time.'" *O'Reilly v. New York Times,* 692 F.2d 863, 68 (2d Cir.1982) (quoting *United States v. Mitchell,* 137 F.2d 1006, 1010 (2d Cir.1943), *cert. denied,* 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944)). In addition to reinstituting Article 78 proceedings, Kearney may seek state habeas corpus, or raise his claims at trial and then, if he is convicted, on appeal. *United States ex. rel. Scranton v. State of New York,* 532 F.2d 292 (2d Cir.1976). It is not enough to assert, as petitioner here has done, that several attempts have been made to advance constitutional claims. Instead, a petitioner "must exhaust all available avenues of resort to the state courts prior to commencing a[n] ... action in the federal courts." *Finetti v. Harris,* 609 F.2d 594, 598 (2d Cir.1979). Because Kearney has not satisfied the exhaustion requirement, the court may not consider the merits of his habeas claim.

■ Were this court free to pass on Kearney's claim, it would dismiss his petition for failure to allege a constitutional violation. Acknowledging the deference that must be accorded to officials in the administration of prisons, the Supreme Court has held that inmates have no constitutional right to remain in any particular facility:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him as subject to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not ... guarantee that the convicted prisoner will be placed in any particular prison ....

*Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1975). The court cannot accept Kearney's argument that the "conditions of his confinement" (i.e., constant transfers) violate his Sixth Amendment right to counsel and his Fourteenth Amendment right of access to the courts.[4] Although communication between Kearney and his attorney has been impaired due to his repeated transfers, this "fact does not make out a deprivation of plaintiff's civil rights [citations omitted] at least when the prisoner does not allege that he was prevented altogether from conferring with his counsel." *Figueroa v. Kapelman,* 526 F.Supp. 681, 685 (S.D.N.Y.1981). *See also Pino v. Dalsheim,* 558 F.Supp. 673 (S.D.N.Y.1983); *Mingo v. Patterson,* 455 F.Supp. 1358 (D.Colo.1978). Kearney also maintains that his right to act as co-counsel has been violated because he is unable to contact potential witnesses in the New York City metropolitan area. This argument is without merit, since, as stated previously, a defendant represented by counsel has no constitutional right to proceed *pro se. O'Reilly v. New York Times, supra.* Moreover, petitioner is free to communicate with witnesses via the mails.

---

**4.** If Kearney's transfers were ordered in retaliation for constitutionally protected activities, his claim would be cognizable. *See, e.g., Buise v. Hudkins,* 584 F.2d 223 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Pino v. Dalsheim,* 558 F.Supp. 673 (S.D.N.Y.1983). But even under the liberal standard of *Haines v. Kerner, supra,* no such claim may be read into Kearney's petition.

Kearney's right of access claim is also unavailing. "The right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of federal constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1973). Undoubtedly, the difficult trip to and from court makes it difficult for Kearney to be alert during his appearances and his transfers hamper his ability to prepare writs. However, "the extent to which [a] right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration." *Procunier v. Martinez,* 416 U.S. 396, 420, 94 S.Ct. 1800, 1815, 40 L.Ed.2d 224 (1973). Respondents have a legitimate interest in managing the prison population and must be allowed ample latitude to prevent overcrowding. Moreover, it must be remembered that Kearney is not yet on trial. Given crowded court calendars and the ever-expanding prison population, respondents cannot be faulted for failing to assign inmates so as to facilitate pretrial appearances.

Accordingly, respondents' motion to dismiss is granted and the petition is dismissed. No certificate of probable cause will be issued.

**IT IS SO ORDERED.**